## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF ARKANSAS
## FORT SMITH DIVISION

| | | |
|---|---|---|
| Heather M. Kohls, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No. 2:23-cv-02029-PKH |
| | ) | |
| | ) | |
| John Stephen Woodard D/B/A Alligator | ) | **JURY TRIAL DEMANDED** |
| Rays and ABC Entities 1–5, | ) | |
| | ) | |
| | ) | |
| Defendants | ) | |

## COMPLAINT

Plaintiff Heather Kohls ("Plaintiff"), for her Complaint against Defendants John Stephen Woodard D/B/A Alligator Rays ("Defendant Woodard") and ABC Entities 1–5 (collectively, "Defendants"), states and alleges:

### PRELIMINARY STATEMENT

1.      Plaintiff brings this action to recover unpaid minimum wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, the Arkansas Minimum Wage Act ("AMWA"), Ark. Code Ann. §§ 11-4-201 *et seq.*, and for unpaid promised wages under the Arkansas common law.

2.      Plaintiff Kohls worked for Defendants at Alligator Rays restaurant and bar in Altus, Arkansas during 2021 as a bartender and bar manager. Despite eventually agreeing to give her a raise to $10.00 per hour plus tips, according to Defendants' own limited records, attached as Ex. A, Defendants continued to pay her an hourly rate of just $5.50.

3.      In addition to failing to pay her promised wages, Defendants failed to pay even the minimum wages required under FLSA and AMWA.

4.      Defendants were not entitled to a tip credit because Defendants failed to keep required records of Plaintiff's cash tips, Defendants failed to provide required notice regarding the tip credit, and Plaintiff performed untipped work for more than twenty percent of her work for Defendants.

5.      As a result, Defendants failed to pay Plaintiff the required minimum wage.

6.      Even with the tip credit, Defendants' own records show that the tips received by Plaintiff failed to bring her hourly wages to the Arkansas minimum of $11.00 per hour. *See* Ex. A.

7.      Plaintiff Kohls now seeks her unpaid minimum wages, promised wages, liquidated damages, pre-judgment and post-judgment interest, declaratory relief, and attorney's fees and costs.

## JURISDICTION

8.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question).

9.      This Court has jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367 (supplemental jurisdiction).  Plaintiff's state law claims are part of the same case or controversy as Plaintiff's federal claim.

## VENUE

10.      Venue is proper in the Western District of Arkansas pursuant to 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to these claims occurred in this judicial district.

11.     Plaintiff was employed by Defendants at their business located in Franklin County. Therefore, the acts alleged in this Complaint had their principal effect within the Fort Smith Division of the Western District of Arkansas.

## PARTIES

12.     Plaintiff hereby re-alleges and incorporates by reference each of the preceding paragraphs as if set forth fully herein.

13.     Plaintiff Heather Kohls worked for Defendants at Alligator Rays Cajun Sports Bar ("Alligator Rays") from approximately January 7, 2021 until October 28, 2021.

14.     Defendant John Stephen Woodard is a resident of Johnson County, Arkansas.

15.     Alligator Rays is a restaurant and bar that serves seafood, pizza, and other foods and that periodically hosts live music events.

16.     Alligator Rays is located at 109 Main Street in Altus, Arkansas 72821.

17.     Alligator Rays maintains a website at https://alligatorrays.com.

18.     Upon information and belief, Defendant Woodard owned and operated Alligator Rays throughout Plaintiff's employment.

19.     There are several entities that may have been associated with Alligator Rays during the time period relevant to this action, including Alligator Ray Incorporated, an Arkansas for profit corporation that is now dissolved, Alligator Ray's Oyster Bar Incorporated, an Arkansas for profit corporation that is now dissolved, and Alligator Rays, an Arkansas nonprofit corporation in good standing. Defendant Woodard is the registered agent for and director of the Alligator Rays nonprofit. He was also the registered agent for and President of Alligator Ray's Oyster Bar Incorporated.

20.     Upon information and belief, Defendants operated Alligator Rays at 109 Main Street, Altus, AR 72821 throughout Plaintiff's employment.

21.     Upon information and belief, at all times relevant to this action, Defendant Woodard owned the property where Alligators Rays was located and where Plaintiff worked.

22.     Defendant Woodard hired Plaintiff, set her pay rate, determined her position, and retained the authority to discharge her.

23.     At all times relevant to this action, Plaintiff reported directly to Defendant Woodard.

24.     At all times relevant to this action, Defendants provided Plaintiff with all supplies and equipment necessary to perform her job.

25.     At all times relevant to this action, Defendant Woodard was an agent for other Defendants.

**FACTS**

26.     Plaintiff hereby re-alleges and incorporates by reference each of the preceding paragraphs as if set forth fully herein.

27.     For the purposes of this action, Plaintiff worked for Defendants from approximately January 2021 through October 2021.

28.     Defendants hired Plaintiff to work at Alligator Rays in January 2021.

29.     Upon information and belief, Plaintiff's pay rate was $5.50 per hour throughout her employment for Defendants regardless of whether her work was tipped or untipped.

30.     From approximately January 2021 through March 2021, Plaintiff was paid in cash, and was only paid upon request.

31.     Defendants' customers tipped Plaintiff by both credit card and in cash.

32.     Defendants failed to keep records of customers' cash tips to Plaintiff throughout her employment.

**Plaintiff's Work Schedule and Duties**

33.     Though her hours varied somewhat, Plaintiff typically worked approximately 22.5 hours per week:

　　　　a.  Thursdays from approximately 2:30 p.m. to approximately 9:20 p.m.

　　　　b.  Fridays from approximately 2:30 p.m. to approximately 10:20 p.m.

　　　　c.  Saturdays from approximately 2:30 p.m. to approximately 10:20 p.m.

34.     In addition, Plaintiff occasionally worked on Wednesdays from approximately 2:30 p.m. to approximately 9:20 p.m. when her help was needed.

35.     Plaintiff performed both duties that generated tips, such as serving customers at the bar ("tipped work"), and duties that did not generate tips, such as cleaning the bar, taking out trash, gathering dishes, and cutting fruit for drinks ("untipped work").

36.     Plaintiff typically spent approximately sixty to ninety minutes opening Alligator Rays at the beginning of her shift. From approximately 2:30 or 3:00 p.m. until 4:00 p.m. each day that she worked, she performed untipped duties, including those listed in Paragraph 35, with no customers present.

37.     She also regularly performed this and other untipped work while serving customers and while Alligator Rays was open.

38.     Plaintiff typically spent 15 to 30 minutes sweeping, mopping, or performing other untipped work, including some of those duties listed in Paragraph 35, after Alligator Rays closed.

39.     Throughout her employment, Plaintiff performed at least one and a half to two hours of untipped work per shift on Wednesdays through Saturdays in addition to the untipped work she performed while the business was open to the public.

40.     In approximately March 2021, Plaintiff became bar manager.

41.     As bar manager, Plaintiff became responsible for alcohol orders and deliveries and bartenders' schedules.

42.     After becoming bar manager, Plaintiff performed even more untipped work, including taking inventory, picking up alcohol, meeting deliveries, restocking, and setting the bar schedule.

43.     Untipped work occupied more than twenty percent of Plaintiff's time throughout her employment for Defendants.

44.     Defendants paid Plaintiff the same rate of $5.50 per hour for both tipped work and untipped work.

45.     As a result of the policies put in place by Defendants, Plaintiff was often required to perform untipped work for less than minimum wage.

46.     After becoming bar manager, Plaintiff also worked one to two unpaid Sundays per month for approximately one hour to fulfill her alcohol ordering and delivery-related duties. On those days, she performed solely untipped work.

47.     Plaintiff received no compensation for her work on Sundays.

48.     Defendants knew or should have known that she performed this work on Sundays.

49.     Throughout her employment, Plaintiff and one or more of Defendants' other employees, daily handled, sold, and otherwise used goods or materials that had been moved in or

produced for interstate commerce, including beer, wine, soda, napkins, silverware, oysters, and glasses.

50.     Throughout her employment, Plaintiff regularly processed Alligator Rays' customers' credit card transactions using the internet.

51.     Throughout her employment, Plaintiff used the cloud-based point of sale system Harbortouch to perform her work, including to record her work hours, input customer orders, and process customer payments.

52.     After she became bar manager, Plaintiff regularly provided bartenders their work schedules by text and Snapchat. She also placed online orders for alcoholic and non-alcoholic beverages.

**Agreement to Increase Hourly Pay**

53.     In May 2021, Defendant Woodard entered into an oral contract with Plaintiff on behalf of all Defendants to pay her $10.00 per hour plus tips.

54.     Defendant Woodard requested that Plaintiff not share the details of her pay raise with anyone.

55.     According to Defendants' own records, they did not pay Plaintiff her promised raise of $10.00 per hour plus tips.

**Defendants' Pay Records**

56.     Defendants provided Plaintiff just six paystubs throughout her employment, including for the pay dates of April 29, 2021, May 13, 2021, May 27, 2021, and June 25, 2021. *See* Ex. A.

57.     These paystubs were only provided at the request of Plaintiff and were all provided at the same time.

58. According to the pay records Plaintiff still has access to, attached as Ex. A, Plaintiff was paid an hourly rate of $5.50 plus an additional amount labeled "cash tips."

59. According to the pay records provided by Defendants, Plaintiff received less than the Arkansas minimum wage of $11.00 for each hour worked regardless of whether Defendants were entitled to a tip credit under Arkansas law.

60. According to the pay records provided by Defendants, if they were not entitled to a tip credit under federal law, Plaintiff received less than the federal minimum wage of $7.25 for each hour worked.

61. Defendants' own pay records show that Plaintiff was underpaid by $1.83 to $3.30 per hour during this period. *See* Ex. A.

62. Upon information and belief, Plaintiff was similarly underpaid in violation of the AMWA and FLSA throughout her employment for Defendants.

## CAUSES OF ACTION

### Count I
### Fair Labor Standards Act
### (Minimum Wage)

63. Plaintiff hereby re-alleges and incorporates by reference each of the preceding paragraphs as if set forth fully herein.

64. Defendants were each an "employer" under 29 U.S.C. § 203(d) at all times relevant to this action.

65. Defendants employed Plaintiff as an "employee" under 29 U.S.C. § 203(e) at all times relevant to this action.

66. Plaintiff engaged in "commerce" under 29 U.S.C. § 203(b) at all times relevant to this action.

67.     At all times relevant to this action, Defendants were an "enterprise engaged in commerce" under 29 U.S.C. § 203(s)(1)(A) because they (1) had employees engaged in commerce or in the production of goods for interstate commerce and/or had employees handling, selling, or otherwise using goods or materials that have been moved in or produced for interstate commerce; and, upon information and belief (2) had an annual gross volume of sales in excess of $500,000 in 2021.

68.     Defendants were not entitled to take a tip credit under 29 U.S.C. § 203(m)(2)(A) because they failed to maintain required records of Plaintiff's cash tips and hours worked in which Plaintiff did not receive tips pursuant to 29 C.F.R. § 516.28.

69.      Defendants were not entitled to take a tip credit under 29 U.S.C. § 203(m)(2)(A) because they failed to give Plaintiff required notice pursuant to 29 C.F.R. § 531.59.

70.     Defendants were not entitled to take a tip credit under 29 U.S.C. § 203(m)(2)(A) because Plaintiff spent more than 20% of her work for Defendants doing untipped labor.

71.     Defendants were not entitled to take a tip credit under 29 U.S.C. § 203(m)(2)(A) because Plaintiff performed one to one and a half hours of continuous untipped work prior to beginning her untipped work on shifts worked on Wednesdays through Saturdays and an additional hour of solely untipped work on periodic Sundays after she became bar manager.

72.     Plaintiff was never paid for her work on Sundays.

73.     Plaintiff performed this work on Sundays inside Defendants' business while it was open to the public.

74.     Defendants knew or should have known Plaintiff performed work on Sundays.

75.     Since Defendants were not entitled to take a tip credit and also did not pay her any wages for her work on Sundays, they violated 29 U.S.C. § 206 by failing to pay Plaintiff the federal minimum wage of $7.25 per hour.

76.     Defendants' violations of the FLSA were willful.

77.     Plaintiff now seeks her unpaid minimum wages, an equal amount in liquidated damages, and attorney's fees and costs under 29 U.S.C. § 216(b).

**Count II**
**Arkansas Minimum Wage Act**
**(Minimum Wage)**

78.     Plaintiff hereby re-alleges and incorporates by reference each of the preceding paragraphs as if set forth fully herein.

79.     At all times relevant to this action, Defendants employed four or more employees within the meaning of Ark. Code Ann. § 11-4-203(4)(A).

80.     Defendants were Plaintiff's "employer" at all times relevant to this action under Ark. Code Ann. § 11-4-203(4).

81.     Plaintiff was Defendants' "employee" at all times relevant to this action under Ark. Code Ann. § 11-4-203(3).

82.     Plaintiff performed all work relevant to this action in the State of Arkansas.

83.     Plaintiff was entitled to the minimum wage as set forth in Ark. Code Ann. § 11-4-210.

84.     Defendants were not entitled to take an allowance for gratuities because Plaintiff spent more than 20% of her work for Defendants doing untipped work.

85.      Defendants were not entitled to take an allowance for gratuities for all hours worked by Plaintiff because she performed one to one and a half hours of continuous untipped

work prior to beginning her untipped work on shifts worked on Wednesdays through Saturdays and an additional hour of solely untipped work on periodic Sundays after she became bar manager.

86.     Even if Defendants were otherwise entitled to an allowance for gratuities, Defendant's own records show that Plaintiff was paid below the Arkansas minimum wage during the weeks of April 15 through April 28, 2021, April 29 through May 12, 2021, May 13 through May 26, 2021, and June 10 through June 23, 2021 because the listed tips did not bring her wages up to the required minimum of $11.00 per hour. *See* Ex. A.

87.     Upon information and belief, Plaintiff's tips did not bring her wages above the Arkansas minimum at other times during her employment for Defendants.

88.     By failing to pay Plaintiff the minimum wage for all hours worked, Defendants violated Ark. Code Ann. § 11-4-210.

89.     Defendant's violation of the AMWA was "willful" as defined by Ark. Code Ann. § 11-4-218(a)(2).

90.     Plaintiff now seeks her unpaid minimum wages, liquidated damages, and attorney's fees and costs pursuant to Ark. Code Ann. § 11-4-218(a).

**Count III**
**(Breach of Contract)**

91.     Plaintiff hereby re-alleges and incorporates by reference each of the preceding paragraphs as if set forth fully herein.

92.     In May 2021, Plaintiff and Defendant Woodard entered into an oral contract that Plaintiff would continue to work as bar manager for Defendants in exchange for a raise in her hourly pay to $10 per hour plus tips.

93.     In reliance on Defendants' promises, Plaintiff continued to work as a bartender and bar manager and performed her obligations under the contract until her employment ended in October 2021.

94.     Defendants failed to ever pay Plaintiff the promised hourly rate of $10.00.

95.     Defendants breached their contract by paying Plaintiff just $5.50 per hour.

96.     Defendants also breached their contract by failing to pay Plaintiff's promised wages for all hours worked.

97.     Defendants' breaches directly and proximately caused Plaintiff damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court enter an Order granting the following relief:

A.     A declaratory judgment that Defendants violated the FLSA and AMWA;

B.     An award of unpaid minimum wages under the FLSA and AMWA;

C.     An award of an amount equal to Plaintiff's unpaid minimum wages as liquidated damages pursuant to 29 U.S.C. § 216(b) and Ark. Code Ann. § 11-4-218(a);

D.     An award for damages arising from Defendants' breach of their contract with Plaintiff;

E.     An award of pre-judgment and post-judgment interest as allowed by law;

F.     An award of costs and reasonable attorneys' fees; and

G.     All other relief this Court deems just and proper.

## DEMAND FOR JURY TRIAL

98.     Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands

a trial by jury on all questions of fact raised in this Complaint.

Respectfully Submitted this 2nd day of March, 2023,

/s/ Alexander Millsap
Alexander Millsap
General Order 41 Student Attorney
avmillsa@uark.edu

/s/ Annie Smith
Annie Smith
Civil Litigation and Advocacy Clinic
University of Arkansas School of Law
107 Waterman Hall
1 University of Arkansas
Fayetteville, Arkansas 72701
(479) 575-3056
abs006@uark.edu
Arkansas Bar #2013005